**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aziz Aityahia, | No. CV-24-02126-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Envoy Air Incorporated, et al., | |
| Defendants. | |

In October 2022, Aziz Aityahia ("Plaintiff") applied for a pilot position with Envoy Air, Inc. ("Envoy") and received a conditional offer of employment. However, after further review, Envoy rescinded its offer, prompting Plaintiff to file an age discrimination charge against Envoy with the EEOC. While the EEOC's investigation was underway, Plaintiff again applied for a position with Envoy and was again rejected, prompting Plaintiff to file a second EEOC charge against Envoy, again alleging age discrimination but also alleging national origin discrimination and retaliation for filing the earlier charge. Having received a right-to-sue letter, Plaintiff now brings claims under Title VII and the Age Discrimination in Employment Act ("ADEA") against both Envoy and American Airlines, Inc. ("American"). American, in turn, has filed a Rule 12(b)(6) motion to dismiss. (Doc. 23.) For the reasons that follow, American's motion to dismiss is granted but Plaintiff is given leave to amend.

…

…

**BACKGROUND**

I. Relevant Facts

The following facts, presumed true, are derived from Plaintiff's complaint (the "Complaint") and other documents incorporated by reference or subject to judicial notice. (Docs. 1, 15, 23-3, 23-4, 24.)

Plaintiff is of "Algerian National Origin" and was 57 years old at the time he filed this lawsuit. (Doc. 1 at 2.)

Envoy is a subsidiary of Envoy Aviation Group, which in turn is a subsidiary of American Airlines Group, Inc. ("AAG"). (Doc. 15 at 2.)

American is a wholly owned subsidiary of AAG. (Doc. 24 at 2.)

On October 21, 2022, after reviewing Plaintiff's pilot application, Envoy issued him a "conditional offer" for employment. (Doc. 1 at 2.)

On October 23, 2022,[1] upon invitation, Plaintiff attended an in-person "local job and interview session" in Phoenix, where his pilot application was reviewed by recruiters, including his pilot certificates which show his date of birth and Algerian national origin. (*Id.* at 2-3.)

On October 24, 2022, Plaintiff's application was once again reviewed, his fingerprints were taken onsite, and "additional documents were signed." (*Id.* at 3.) Plaintiff also submitted a drug test at some point in the following days. (*Id.*)

On December 8, 2022, Envoy's Pilot Recruitment Director mailed Plaintiff a notice "falsely claiming that [he] did not pass the remaining portion of the hiring process" and rescinding the conditional employment offer. (*Id.*)[2]

On June 2, 2023, Plaintiff filed his first charge against Envoy with the EEOC, alleging that Envoy, by rescinding his offer, had discriminated against him because of his

---

[1] In Plaintiff's EEOC charges, he appears to allege that the interview took place on November 11, 2022. (Docs. 23-3, 23-4.)

[2] In the first EEOC charge, Plaintiff alleged that Envoy's Director of Pilot Recruitment, Elise Shirley, rescinded his offer (Doc. 23-3), but in the second charge, Plaintiff alleged that Envoy's Chief Pilot, Robert Neider, was the one who rescinded the offer (Doc. 23-4).

1  age.  (Doc. 23-3.)  In the particulars section of the charge, Plaintiff alleged that Envoy
2  offered no reason for its decision to rescind the offer and that Envoy had hired pilots under
3  40 years old with qualifications inferior to his own.  (*Id.*)
4          On December 7, 2023, while this charge was being investigated, Plaintiff applied to
5  attend another job fair and interview session with Envoy.  (Doc. 1 at 3.)
6          On December 8, 2023, Envoy notified Plaintiff via email that he did not qualify for
7  the position.  (*Id.* at 3-4.)
8          On December 18, 2023, Plaintiff filed a second charge against Envoy with the
9  EEOC.  (Doc. 23-4.)  In this second charge, Plaintiff added allegations of national origin
10 discrimination to his initial age discrimination charge and further alleged that his second
11 pilot application was denied on the basis of his age, Algerian national origin, and as
12 retaliation for his filing of the first charge.  (*Id.*)
13         On May 22, 2024, the EEOC issued Plaintiff a right-to-sue letter.  (Doc. 1 at 5.)
14 II.    <u>Procedural Background</u>
15         On August 20, 2024, Plaintiff, who is proceeding *pro se*, filed the Complaint.  (Doc.
16 1.)  In addition to the allegations outlined above, the Complaint contains a demand for
17 "[e]mployment reinstatement.  Financial compensation and reparation.  Rapid path to
18 captain position with American Airlines Full union (ALPA) benefits on day 1."  (*Id.* at 4.)
19 It also requests $10,000,000 in monetary compensation.  (*Id.*)
20         On October 31, 2024, American filed the pending motion to dismiss.  (Doc. 23.)
21         On November 20, 2024, Plaintiff filed a response.  (Doc. 30.)
22         On December 4, 2024, American filed a reply.  (Doc. 34.)
23         Neither side requested oral argument.

**DISCUSSION**

25 I.    <u>Legal Standard</u>
26         Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient
27 factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *In re*
28 *Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks

omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When evaluating a Rule 12(b)(6) motion, "all well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (quoting *Iqbal*, 556 U.S. at 678). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II.     Documents Beyond The Pleadings

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). For materials incorporated by reference, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder*, 450 F.3d at 448. A court may also "take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

201(b). Thus, courts may take judicial notice of corporate details contained in SEC filings. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) ("Defendants sought judicial notice for Corinthian's reported stock price history and other publicly available financial documents, including a number of Corinthian's SEC filings. In its dismissal order, the court granted Defendants' unopposed requests for judicial notice. Metzler does not contest the propriety of the noticing of these documents on appeal, which in any event was proper."); *Dreiling v. American Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) ("We . . . may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings.").

Here, the parties proffer several documents beyond the pleadings. Plaintiff attaches his right-to-sue letter to the Complaint (Doc. 1 at 5), and therefore the Court considers it as part of the pleadings. The Court also considers as incorporated by reference into the Complaint the two EEOC charges, which American attaches to its motion to dismiss, because the Complaint refers to those charges, the charge documents are central to Plaintiff's claims, and neither party questions their authenticity. *Cf. Marder*, 450 F.3d at 448. Furthermore, the Court takes judicial notice of the facts contained within the parties' corporate disclosure statements (Docs. 15, 24), which attest to the corporate structures of Envoy and American, because that information is contained in publicly available financial documents filed with the SEC. *See* https://www.sec.gov/Archives/edgar/data/6201/000119312524114062/d636721dars.pdf (AAG Form 10-K: "American Airlines Group Inc. (AAG), a Delaware corporation, is a holding company and its principal, wholly-owned subsidiaries are American Airlines, Inc. (American), Envoy Aviation Group Inc., PSA Airlines, Inc. (PSA) and Piedmont Airlines, Inc. (Piedmont)."). In contrast, the remaining documents attached to the parties' motion papers fail to meet the standard for consideration at the motion to dismiss stage.[3]

…

---

[3] Such documents include the declaration of AAG officer Mathew Dominy, which American attaches to its motion (Doc. 23-2), as well as the various documents (Envoy brochures, flight receipts, email exchanges) Plaintiff attaches to his response brief (Docs. 30-1, 30-2).

- 5 -

III. The Motion To Dismiss

    A. **The Parties' Arguments**

American argues the Complaint should be dismissed for three separate but interrelated reasons. (Doc. 23.) First, American argues that because Plaintiff named only Envoy in his EEOC charges—and because he did not allege that American was "involved in the acts giving rise to Plaintiff's claims, or any of the other exceptions to the 'general rule' . . . that Title VII claimants may sue only those named in the EEOC charge"—Plaintiff failed to exhaust his administrative remedies against American. (*Id.* at 4-6.) Second, American similarly argues that because the Complaint's allegations refer only to Envoy and do not allege that Plaintiff "applied for a job with [American], that [American] failed to hire him, or that [American] had anything to do with either of his attempts to gain employment with Envoy," the Complaint fails to allege facts sufficient to support a claim against American under Rule 8. (*Id.* at 7-8.) Third, American argues that it is not a properly named defendant because (1) it is not Envoy's parent company; and (2) even if it were, it would not be liable under well-settled law because it "exerts no control over Envoy, its employees, or its business operations, and vice-versa." (*Id.* at 8-9.) American further argues that "Plaintiff has not alleged that he applied for or otherwise sought employment with [American] or that [American] employed Plaintiff at any point in time, nor has Plaintiff alleged a single factual allegation relating to any action or inaction by [American], let alone action or inaction that subjects [American] to possible liability under Title VII or the ADEA." (*Id.* at 9.)

In response, Plaintiff appears to argue that American's arguments are without merit because Envoy and American are so interrelated as to constitute the same entity under Title VII and the ADEA for purposes of the administrative exhaustion requirement and under Rule 8. (Doc. 30 at 1-5.) In support of this argument, Plaintiff raises a host of new factual assertions that do not appear in the Complaint, including that during the 2022 job event in Phoenix, Envoy recruiters described the pilot position at Envoy as a position with American Airlines, and various other allegations about Envoy's use of American's email

system and planes. (*Id.* at 2-3.) Plaintiff argues that such facts render Envoy and American "operationally inseparable." (*Id.* at 3.) Relatedly, Plaintiff argues filing a separate EEOC charge against American is, "in [his] view, not necessary, since Envoy Air acted as the agent for American Airlines, to hire future pilots for both brands operated by American Airlines including American Eagle." (*Id.*) As for the rest of American's arguments, Plaintiff "simply refute[s] them entirely, simply because they are an attempt to distract the proceedings from the core issue of discrimination." (*Id.* at 4.)

In reply, American argues that "Plaintiff's subjective view that it was not necessary to name [American] as a respondent in either his Original Charge or his Amended Charge because Envoy acted as 'the agent' for [American] is legally and factually inaccurate, and does not absolve Plaintiff from his obligation to exhaust his administrative remedies against [American] by filing a charge of discrimination with the EEOC and/or ACRD and obtaining a right-to-sue letter as it relates to [American]." (Doc. 34 at 7.) American reiterates that Plaintiff has failed to meet his pleading burden because "Plaintiff's only reference to [American] in the Complaint is Plaintiff's demand he desires a '[r]apid path to captain position with American Airlines'" but "Plaintiff pleads no facts . . . showing how [American] is implicated in his claims, let alone any actions [American] took in violation of Title VII or the ADEA." (*Id.* at 8.) According to American, Plaintiff "fails to set forth facts sufficient to establish that [American] is a proper party" because "Plaintiff fails to refute the realities that: [American] is a direct subsidiary of AAG, Envoy is a grandchild subsidiary of AAG, and Envoy is not a subsidiary of [American]." (*Id.* at 3.) American further argues that even if it were Envoy's parent company, Plaintiff fails to plead facts sufficient to establish that it and Envoy are "operationally inseparable" such that it can be said to constitute Envoy's parent company or otherwise be held liable for Envoy's actions, and that such allegations would regardless be "antagonistic to the publicly available corporate structure of both [American] and Envoy" which shows that American "is not, and has never been part of any partnership, agency relationship, joint venture, or joint enterprise with Envoy" and "exerts no control over Envoy." (*Id.* at 4-5.)

B. **Analysis**

1. Exhaustion

"[A] plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim." *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) (citations omitted); *see also* 42 U.S.C. § 2000e-5(f)(1). "Exhaustion of administrative remedies under Title VII requires that the complainant file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge." *Lyons*, 307 F.3d at 1104 (citing 42 U.S.C. § 2000e-5(b)). In Arizona, the deadline for a complainant to file a claim with the EEOC is extended from the ordinary 180 days to 300 days if the complainant first initiates proceedings with the state agency. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 623(d)(1), 633(b). Additionally, "where, like here, the ACRD and EEOC are parties to a worksharing agreement, a complainant ordinarily need not file separately with federal and state agencies." *Cox v. Glob. Tool Supply LLC*, 629 F. Supp. 3d 963, 971 n.2 (D. Ariz. 2022) (internal quotations omitted). *See also Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 544 (2019) ("If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies.") The same exhaustion requirement applies to claims under the ADEA. *Ramirez v. Kingman Hosp. Inc.*, 374 F. Supp. 3d 832, 854 (D. Ariz. 2019) ("Exhausting administrative remedies by filing a timely charge with the EEOC or the appropriate state agency is a statutory pre-requisite for an employee to pursue litigation under both Title VII and the ADEA.").

"[T]he general rule" is that "Title VII claimants may sue only those named in the EEOC charge because only they had an opportunity to respond to charges during the administrative proceeding." *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990). However, the Ninth Circuit has recognized certain exceptions to this general rule. One exception applies when an unnamed party was "involved in the acts giving rise to the E.E.O.C. claims." *Id.* Another exception applies if the charge "alleg[es] facts from which the court could infer that the unnamed party violated Title VII or the ADEA." *Bernstein*

*v. Aetna Life & Cas.*, 843 F.2d 359, 362 (9th Cir. 1988). A third exception applies "if the unnamed party had notice of the EEOC conciliation efforts and participated in the EEOC proceedings." *Sosa*, 920 U.S. at 1459. The Ninth Circuit also applies an exception "where the EEOC or the [previously unnamed] defendants themselves 'should have anticipated' that the claimant would name those defendants in a Title VII suit." *Id.* (quoting *Chung v. Pomoma County Cmty. Hosp.*, 667 F.2d 788, 792 (9th Cir. 1982)). Although courts "construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading, there is a limit to such judicial tolerance when principles of notice and fair play are involved." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (cleaned up).

Here, Plaintiff filed his two EEOC charges on June 2, 2023, and December 18, 2023. They only name "Envoy Air Inc." as the respondent. (Docs. 23-3, 23-4.) They make no mention of American, AAG, or any other corporate entities. The resulting right-to-sue letter from the EEOC only identifies "Envoy Air Inc." as the respondent. (Doc. 1 at 5.) Consequently, unless one of the aforementioned exceptions to the general rule applies, Plaintiff has failed to exhaust his administrative remedies with respect to American and thus may not sue American.

The Court concludes that the charges[4] do not contain factual allegations or other information sufficient to trigger any of the exceptions. The charges do not allege that American was independently involved in the alleged discriminatory actions or contain any other allegations that give rise to an inference that American independently violated Title VII or the ADEA. Nor is there any evidence that American had notice of or participated in the EEOC proceedings. Last, the charges contain no allegations suggesting that American should have anticipated that it would be named in a Title VII or ADEA suit. Amidst the few concrete allegations contained in the charges, Plaintiff mentions only Envoy and Envoy employees. Even viewing these allegations with "utmost liberality," they are insufficient to satisfy Plaintiff's duty to exhaust administrative remedies as to

---

[4] Nor does the Complaint itself or any other document properly before the Court.

American, AAG, or any other entity beyond Envoy. Other courts have found a lack of exhaustion under similar circumstances. *Marks v. Able Body Lab.*, 2009 WL 10673629, *3 (D. Ariz. 2009) ("Plaintiff does not allege that his EEOC charge named Manheim, nor does he allege that the charge contained facts from which it could be inferred that Manheim violated Title VII . . . . Manheim is a separate entity from Able Body, and naming Able Body in the EEOC charge does not exhaust administrative remedies with respect to Manheim. Plaintiff's Title VII claim against Manheim must be dismissed for failure to exhaust administrative remedies.").

### 2. Rule 8 Pleading Standard

Although the analysis could end there, American is also entitled to dismissal on the separate ground that the Complaint fails to satisfy the pleading standard under Rule 8 of the Federal Rules of Civil Procedure. Of course, "we have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Conclusory and vague allegations, however, will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). A liberal interpretation may not supply essential elements of the claim that were not initially pled. *Id.*

Under Title VII, an entity can be held liable for discrimination if it is an "employer" of the plaintiff. 42 U.S.C. § 2000e-2(a). A separate corporate entity may be held liable for the discriminatory acts of an employing entity only under limited circumstances. For example, under the "integrated enterprise" doctrine, courts will treat two entities as one employer for liability purposes "if they have (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1213 (9th Cir. 1989). In performing this analysis, "courts will consider all four of these factors together, but centralized control of labor is often considered the most important factor, . . . the key issue [being] which entity had the ultimate authority over employment decisions concerning the

individual alleging discrimination." *Barrera v. Prima Frutta Packing, Inc.*, 2025 WL 950379, *3 (E.D. Cal. 2025). Meanwhile, under the joint-employer doctrine, if a separate corporate entity exercises "control over the terms and conditions of employment" of another entity, then it may be subject to liability "for discrimination relating to those terms and conditions." *U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019). However, "even if a joint-employment relationship exists, one joint employer is not automatically liable for the actions of the other." *Id.* at 641. "Liability may be imposed for a co-employer's discriminatory conduct only if the defendant employer knew or should have known about the other employer's conduct and 'failed to undertake prompt corrective measures within its control.'" *Id.*

Here, the Complaint only mentions American three times: once in the case caption, another time when identifying the parties, and a third time in the request for relief, wherein Plaintiff requests "[r]apid path to captain position with American Airlines Full union (ALPA) benefits on day 1." (Doc. 1 at 4.) The Complaint nowhere alleges that American had any role in, or knowledge, of Envoy's allegedly discriminatory conduct. Additionally, although Plaintiff asserts in his response brief that American exercises "direct operational control" over Envoy and that the two entities "are operationally inseparable" (Doc. 30 at 1, 3), no allegations to that effect appear in the Complaint. The Complaint thus fails to allege facts that would allow the Court to draw the reasonable inference that American could be held liable for Envoy's alleged discriminatory conduct under an "integrated enterprise" or joint-employment theory. *Iqbal*, 556 U.S. at 678.

III. <u>Leave To Amend</u>

    A. **The Parties' Arguments**

American asks the Court to dismiss the Complaint "with prejudice" because the defects in the Complaint cannot be cured by amendment. (Doc. 23 at 9.) In support of this contention, American provides two distinct arguments. First, American argues that Plaintiff cannot cure his failure to exhaust administrative remedies (which must be cured as a prerequisite to filing suit) by filing a new or amended EEOC charge because the

complained-of adverse actions occurred outside the relevant statutory period. (*Id.* at 6, 8.) Second, American argues that Plaintiff has not alleged facts sufficient to establish that American is a proper party to the lawsuit, "a fatal fact that cannot be cured by amendment or otherwise." (*Id.* at 9.)

Plaintiff does not directly respond to these arguments but notes "[f]or the record" that he "requested the AZCRD and the EEOC to amend [his] discrimination complaint to reflect all parties connected to employment of pilots" and that his request was "not completed." (Doc. 30 at 4.) Plaintiff also argues that if the Court concludes that his Complaint and/or EEOC charge are defective, the Court may "cure any deficiency and restore [his] right to have a fair review of [his] entire complaint." (*Id.*)

American reiterates its arguments in reply. (Doc. 34.)

B. **Analysis**

"Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (cleaned up). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

Applying these standards, leave to amend is proper.

As for American's first futility argument, it is not necessarily true that Plaintiff must file an amended EEOC charge naming American as the respondent in order to satisfy the administrative exhaustion requirement. As outlined above, there are several exceptions to the general requirement that a plaintiff seeking to file Title VII (and ADEA) discrimination suits against a party must first file an EEOC charge specifically naming that party. Thus, if Plaintiff were to allege additional facts sufficient to satisfy one or more of these exceptions, he would not necessarily need to amend his EEOC charge. At this stage, the Court cannot say with absolute clarity that Plaintiff will be unable to make that showing.

American's second futility argument fails for essentially the same reason. Although

the Complaint does not allege sufficient facts that allow the Court to draw the reasonable inference that American could be held liable for Envoy's alleged discriminatory conduct under an "integrated enterprise" or joint-employment theory, the Court cannot say at this stage that these omissions are uncurable.

The amended complaint must adhere to all portions of Rule 7.1 of the Local Rules of Civil Procedure ("LRCiv"). Additionally, the amended complaint must satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Specifically, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); *see also* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). Where a complaint contains the factual elements of a cause, but those elements are scattered throughout the complaint without any meaningful organization, the complaint does not set forth a "short and plain statement of the claim" for purposes of Rule 8. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988).

If the amended complaint fails to comply with the Court's instructions as provided in this Order, the action may be dismissed pursuant to 28 U.S.C. § 1915(e) and/or Rule 41(b) of the Federal Rules of Civil Procedure. *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal with prejudice of amended complaint that did not comply with Rule 8(a)). Given this specific guidance on pleading requirements, the Court is not inclined to grant leave to file another amended complaint if the first amended complaint is found to be deficient. *Ferdik*, 963 F.2d at 1261 (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Plaintiff is directed to become familiar with the Local Rules and the Federal Rules of Civil Procedure and is reminded that the Federal Court Self-Service Clinic provides free civil legal help to self-represented litigants. (*See* Notice to Self-Represented Litigant, Doc. 5.)

Accordingly,

**IT IS ORDERED** that American's motion to dismiss (Doc. 23) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff may file a First Amended Complaint ("FAC") within 14 days of the issuance of this order. Any changes shall be limited to attempting to cure the deficiencies raised in this Order and Plaintiff shall, consistent with LRCiv 15.1(b), attach a redlined version of the pleading as an exhibit.

**IT IS FURTHER ORDERED** that if Plaintiff does not file a FAC within 14 days of the issuance of this Order, the Clerk shall dismiss American as a defendant.

Dated this 2nd day of June, 2025.

Dominic W. Lanza
United States District Judge