**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aziz Aityahia, | No. CV-24-02126-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Envoy Air Incorporated, et al., | |
| Defendants. | |

Aziz Aityahia ("Plaintiff"), who is proceeding *pro se*, has sued Envoy Air Inc. ("Envoy") for national origin- and age-based discrimination and for retaliation. Now pending before the Court are the parties' cross-motions for summary judgment. (Docs. 87, 90.) For the reasons that follow, Plaintiff's motion is denied and Envoy's motion is granted.

**BACKGROUND**

I.    Preliminary Matters

In their motion papers, the parties appear to present differing accounts of some of the events giving rise to Plaintiff's claims. In ruling on cross-motions for summary judgment, the Court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *Am. C.L. Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

The analysis here, however, is complicated by the manner in which Plaintiff approached the summary judgment briefing process. Consistent with Federal Rule of Civil

Procedure 56(c)(1), Envoy's motion includes a statement of facts (Doc. 87 at 2-10) and is supported by citations to a series of exhibits—which take the form of declarations, deposition transcripts, documents, a letter, and an email—to substantiate those factual assertions (Docs. 87-2, 87-3).  Unfortunately, in his response and cross-motion, Plaintiff does not clearly identify which, if any, of Envoy's asserted facts are genuinely disputed.  Nor does Plaintiff support any of the factual assertions in his brief with citations to the record.  Instead, Plaintiff proffers a narrative of events without citing any of the exhibits attached to his brief.  (*See generally* Doc. 90.)

Envoy argues that because Plaintiff "ignores Envoy's Statement of Undisputed Facts . . . in its entirety," "all facts should be deemed admitted and the Court should grant Envoy's motion." (Doc. 98 at 2.)  Envoy also argues that because Plaintiff's response and cross-motion does not contain "one single cite to the materials provided," Envoy "should not be required to comb through Plaintiff's exhibits and guess at which documents he relies upon for each purported fact." (*Id.* at 3.)  In reply, Plaintiff, although not specifically responding to Envoy's arguments, provides a section that appears to respond to Envoy's statement of undisputed facts. (Doc. 112 at 2-4.)  Unfortunately, Plaintiff fails to provide specific citations to the record or otherwise substantiate the factual assertions appearing in that section of his reply. (*Id.*)  With that said, Plaintiff's reply includes a different section, titled "DEPOSITION OF THE ENVOY AIR EMPLOYEES," that includes specific citations to the attached depositions of Envoy's employees. (*Id.* at 5-9.)

Under Rule 56(c)(1)(A), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  Similarly, under Rule 56(e)(2), "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Thus, a district court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the

opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  This is true even when a party proceeds *pro se. Bias v. Moynihan*, 508 F.3d 1212, 1218-19 (9th Cir. 2007) ("Bias concedes that she did not present any evidence to the district court to support the claims in her amended complaint.  She maintains, however, that as a *pro se* litigant the district court should have searched the entire record to discover whether there was any evidence that supports her claims.  We disagree.  A district court does not have a duty to search for evidence that would create a factual dispute.  A district court lacks the power to act as a party's lawyer, even for *pro se* litigants.") (citation omitted).[1]

Although Plaintiff's reply provides some record citations in support of the factual assertions set forth therein, Plaintiff has still failed to respond to many of Envoy's asserted facts.  Nevertheless, where the Court can readily identify, either through the record or through Plaintiff's citations in his reply, that a genuine factual dispute exists, the Court will treat the fact as properly disputed.  But where such a conflict is not readily apparent, the Court declines to act as Plaintiff's lawyer and declines to search the record in search of disputed facts.  *Cf. Alfonso v. Cmty. Bridges Inc.*, 2023 WL 4933193, *2 (D. Ariz. 2023) ("[T]he Court may treat as undisputed . . . the subset of facts in [defendant]'s motion that [*pro se*] Plaintiff failed to properly controvert . . . [but] the Court cannot ignore all of the factual assertions in Plaintiff's brief.  Instead, it must identify and credit the subset of the factual assertions that Plaintiff properly supported . . . .); *Jacobs v. Woodford*, 2011 WL 1706470, *11 (C.D. Cal. 2011) ("[W]here a *pro se* plaintiff fails to cite specifically to evidence gainsaying the 'facts' listed in the moving party's [statement of undisputed facts], but it is apparent from a relatively straightforward search through the record that a material

---

[1]     The Ninth Circuit has also held that where a plaintiff is proceeding *pro se*, courts "must consider as evidence in [their] opposition to summary judgment all of [a plaintiff]'s contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [a plaintiff] attest[s] under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).  That principle is inapplicable here because Plaintiff's summary judgment briefs are not signed under penalty of perjury.  Neither is Plaintiff's First Amended Complaint.

evidentiary dispute exists, then the Court should deny summary adjudication despite the plaintiff's failure.  Where such an evidentiary conflict is not readily apparent, however, the Court should decline to do Plaintiff's forgone work for him and should grant the motion . . . .").[2]

II.    Factual Background

With these clarifications in mind, the Court provides the following summary of undisputed facts.

A.    **Plaintiff's First Application**

In October 2022, Plaintiff submitted an application for a pilot position at Envoy ("First Application").  (Doc. 87-2 at 2-18; Doc. 90-2 at 26-42.)

On October 21, 2022, Envoy sent Plaintiff a conditional offer of employment for a first officer pilot position.  (Doc. 87-2 at 68-69; Doc. 90-2 at 44-45.)  The conditional offer stated that it was subject to Plaintiff's successful completion of a drug test and a background check.  (Doc. 87-2 at 24, 68; Doc. 90-2 at 45.)  The conditional offer also stated that it was subject to a background check pursuant to the Pilot Records Improvement Act of 1966 ("PRIA"), during which Envoy would review Plaintiff's employment history. (Doc. 87-2 at 24, 68; Doc. 90-2 at 45.)

After Plaintiff submitted his First Application, he met with Envoy's Pilot Recruiter Aaron Smith ("Smith") at an Envoy-advertised job fair in Phoenix.  (Doc. 87-2 at 28; Doc. 87-3 at 3-4.)  During their meeting, Smith assisted Plaintiff with his First Application. (Doc. 87-3 at 5.)  Plaintiff made several modifications to the First Application, which were handwritten by Plaintiff with his signed initials appearing beside each modification.  (Doc. 87-2 at 29, 31-32.  *See also* Doc. 87-2 at 2-18 [First Application containing handwritten

---

[2]    Envoy also notes that Plaintiff "exceeded the page limit by nine pages without seeking leave of Court."  (Doc. 98 at 1.)  *See also* LRCiv. 7.2(e)(1).  Despite Plaintiff's failure to abide by the page limit established in the local rules, the Court "is mindful of its obligation to treat pro se litigants liberally when it comes to procedural requirements." *Hobbs v. M3 Eng'g & Tech. Corp.*, 2023 WL 2478935, *1 (D. Ariz. 2023).  Moreover, as detailed below, Envoy, having been granted summary judgment in full, is not prejudiced by the consideration of Plaintiff's excess pages.  Thus, the Court will consider Plaintiff's filings in full.

modifications with the initials "AA" appearing next to the modifications]; Doc. 90-2 at 26-42 [same].)  The modifications were as follows:

- At page "EA-AA000035," which required Plaintiff to list "ALL driving violations" and, under the heading "Criminal Record," to indicate whether Plaintiff ever had a "License Suspended," Plaintiff initially answered the "License Suspended" question as "no."  Plaintiff then modified the answer to "yes" and added "CDL medical expired in 2020, causing the suspension of the CDL license.  I never used it." (Doc. 87-2 at 4, 29; Doc. 90-2 at 28.)

- At page "EA-AA000046," which required Plaintiff to indicate whether he "ever received a notice of disapproval from an FAA [Federal Aviation Administration] Inspector or FAA designated examiner for failure of an FAA Oral, Practical, or Flight test" and "ever failed a type rating, proficiency check, or line check?", Plaintiff initially answered both questions "no."  Plaintiff modified both answers to "yes." (Doc. 87-2 at 15, 31; Doc. 90-2 at 39.)

- Also at page "EA-AA000046," which required Plaintiff to indicate "[h]ow many total Notices of Disapproval/Unsat[isfactories] have you received for failure of an FAA flight test?", Plaintiff initially left the question blank.  Plaintiff then modified his answer to "4." (Doc. 87-2 at 15, 32; Doc. 90-2 at 39.)

The First Application also included Plaintiff's employment history from 2006 onward.  (Doc. 87-2 at 5-11; Doc. 90-2 at 29-35.)

After meeting with Plaintiff, Smith sent the modified First Application to Envoy's Captain's Review Board ("CRB").  (Doc 87-2 at 34-35.)  The CRB consists of senior Envoy pilots who review every candidate under consideration to be hired as a pilot.  (Doc. 87-3 at 7 ¶ 3.)  At the time of the First Application, there were 10 pilots who participated in the application review process for the CRB.  (Doc. 87-2 at 65 ¶ 4.)  Those pilots were 46, 56, 57, 58, 58, 61, 62, 64, 66, and 68 years old.  (*Id.*)

On December 8, 2022, the CRB reviewed 28 pilot applications, including Plaintiff's First Application.  (*Id.* at 65 ¶ 5; Doc. 87-3 at 8 ¶ 4.)  The applications were split among

the CRB members, and Captain Robert Neider ("Neider"), 57 years old at the time, was the pilot who reviewed Plaintiff's First Application.  (Doc. 87-3 at 8-9 ¶¶ 4, 9.)  Neider determined that Plaintiff was "not competitive" and therefore did not submit Plaintiff into Envoy's pilot training class.  (*Id.* at 8 ¶ 5; Doc. 112-1 at 9-10.)  As a result, Envoy did not extend an official offer of employment to Plaintiff.  (Doc. 87-3 at 8 ¶ 5.)

Neider deemed Plaintiff "not competitive" based primarily on Plaintiff's "[r]ecency of flight experience, airline service, and job history."  (*Id.*; Doc. 112-1 at 10.)  Specifically, in his declaration, Neider states:

Plaintiff had not flown for a commercial airline in nearly 10 years, and that was only for a couple months.

After leaving Mesa Air Group ("Mesa"), [Plaintiff] held numerous jobs, none of which he stayed at for very long, and he had large gaps in his employment.

. . .

Given Plaintiff's history of job-hopping, I thought it unlikely that Plaintiff would stay in the position long enough for the significant training investment to be worthwhile.

Plaintiff's letters of recommendation were written over a decade prior, which further demonstrated his lack of pilot positions and being able to maintain a pilot position.

(Doc. 87-3 at 8 ¶ 6.  *See also* Doc. 90-1 at 4-7 [Plaintiff's letters of recommendation, written in 1996, 2000, 2002, and 2010]; Doc. 87-3 at 11 [CRB decision]; Doc. 90-2 at 52 [same].)  Separately, Neider had "concerns" regarding Plaintiff's initial failure to disclose the failed FAA flight tests.  (Doc. 87-3 at 8 ¶ 7.  *See also* Doc. 87-2 at 15; Doc. 90-2 at 39.)

Of the 28 pilot applications reviewed by the CRB on December 8, 2022, three individuals, including Plaintiff, were deemed "not competitive."  (Doc. 87-2 at 65 ¶ 5.)  Plaintiff was 56 years old at the time, and the other two individuals deemed not competitive were 38 years old and 46 years old.  (*Id.*)  The remaining 25 individuals received job offers.  (*Id.* at 65 ¶ 6.)  Fourteen of those individuals were over 40 years old and four of them (aged 59, 61, 63, 63) were older than Plaintiff.  (*Id.*)

That same day, December 8, 2022, Elise Shirey ("Shirey"), on behalf of Envoy, sent

Plaintiff a letter informing him "that [he] [did] not successfully pass[] the remaining portions of the Pilot pre-employment process" and that Envoy was "therefore, rescinding [their] offer of employment effective immediately." (Doc. 87-2 at 44; Doc. 87-3 at 13; Doc 90-2 at 7; Doc. 112-2 at 7-8.)

On December 18, 2022, Plaintiff emailed Neider to ask "what part of the back ground [sic] check had caused the job offer to be rescinded?" (Doc. 90-2 at 2.) Neider responded: "HR will never tell me directly but they hinted at somewhere you may have worked in the past? They simply say something like non-competitive . . . . so sorry!!" (*Id.*)

On June 2, 2023, Plaintiff filed a charge of discrimination against Envoy with the Arizona Civil Rights Division ("ACRD"). (Doc. 90-3 at 2.)

B.    **Plaintiff's Second Application**

On December 7, 2023, Plaintiff received an email from Envoy inviting him to "Join [Envoy] for an Exclusive Open House" taking place on December 13, 2023 (the "Envoy Recruiting Event"). (Doc. 90-3 at 3-4.) Plaintiff submitted an application to attend the Envoy Recruiting Event ("Second Application"). (Doc. 87-2 at 45-46; *id.* at 65 ¶ 7; Doc. 90-3 at 7-10.)[3]

On the Second Application, Envoy listed "Attendee Requirements" as follows: "≥ 500 hrs of qualifying Part 121, 135, or 91 flight time[.]   No [conditional job offer] required." (Doc. 90-3 at 7.) The Second Application also required applicants to indicate whether they had "at least 500 hours of qualifying Part 121.436 flight time"; Plaintiff

---

[3]    The operative complaint appears to allege that Plaintiff was applying for a job with Envoy, as opposed to a spot at the Envoy Recruiting Event. (Doc. 63 ¶¶ 77, 87.) Plaintiff's summary judgment briefing, however, does not dispute that his Second Application was in fact submitted to attend the Envoy Recruiting Event, not for a job opening. (Doc. 90 at 14-15; Doc. 112 at 4.) With that said, there does appear to be a dispute of fact as to whether the Envoy Recruiting Event was limited to recruiting for a Direct Entry to Captain ("DEC") position or was targeted toward a broader group of pilots with less flight experience. (*See, e.g.*, Doc. 87-2 at 52 [Plaintiff's deposition: "Q: Did you understand that that's what you had applied to attend, an event where you could be hired as a captain directly upon hire? A: "So let's set the record straight. That's a lie. . . . [T]he application I filled out online was specifically addressed to individuals with some 121 flight experience . . . ."]; Doc. 112 at 4 ["The [Envoy Recruiting Event], held by Envoy Air in December 2023, was not advertised as a [DEC] event, as shown by their own adds [sic] and the form I filled out for that event on December 7 2023."].) That dispute is addressed in later portions of this order.

selected "Yes" and listed his "Total 121.436 Flight Time" as "733" hours. (*Id.* at 8.)

On December 8, 2023, Envoy sent Plaintiff an email (the "December 2023 Email") that provided:

> We appreciate your interest in joining Envoy air, and apologize that you **DO NOT** qualify for our upcoming recruitment event for pilots with CFR 121.436 Captain qualifying time. Though our Recruitment Team is actively reviewing applications for Cadet, First Officer, and Captain positions here at Envoy, our December 13 event is specifically for those applications with prior 121, 135, and some part 91 experience that would qualify them join [sic] us as a Captain directly upon being hired.

(Doc. 87-2 at 51-52; Doc. 87-3 at 19; Doc. 90-3 at 11.) The December 2023 Email contains the email signature of Hunter Hayes ("Hayes"), a "First Officer" and "Pilot Recruiter" at Envoy. (Doc. 87-3 at 20; Doc. 90-3 at 12.)

III.    Procedural History

On August 20, 2024, Plaintiff initiated this action. (Doc. 1.)

On June 16, 2025, Plaintiff filed the operative pleading, the First Amended Complaint ("FAC"). (Doc. 63.)

On October 23, 2025, Envoy filed its motion for summary judgment. (Doc. 87.)

On November 11, 2025, Plaintiff filed a response and cross-motion for summary judgment. (Doc. 90.) Both motions are now fully briefed. (Docs. 98, 112.)[4] Neither side requested oral argument.

**DISCUSSION**

I.    Legal Standard

"The court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue

---

[4]    Plaintiff's reply (Doc. 112) is framed as both a sur-reply and a reply in support of his cross-motion for summary judgment. The Court, however, has not granted Plaintiff leave to file a sur-reply (Doc. 110), and will thus construe Plaintiff's filing only as a reply in support of his cross-motion for summary judgment.

- 8 -

in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citation omitted). The Court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference[s] in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" *Fresno Motors*, 771 F.3d at 1125 (citation omitted).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* There is no issue for trial unless enough evidence favors the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. At the same time, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254. Thus, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.* at 255.

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits," but the Court must consider all evidence submitted in support of both motions when separately reviewing the merits of each. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation marks omitted). For "the party with the burden of persuasion at trial" to succeed in obtaining summary judgment, it "must establish beyond controversy every essential element" of each claim on which summary judgment is sought. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation marks omitted). The party without the burden of persuasion at trial is entitled to summary judgment where it establishes that the party with the burden of persuasion will be unable to prove at least one element of its claim in light of the undisputed facts. *Celotex Corp.*, 477 U.S. at 322-23. This distinction reflects that the burden is ultimately on the proponent of each claim to prove it. *Id.* ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

II.    First Application

In October 2022, Plaintiff submitted his First Application and was extended a conditional offer of employment. On December 8, 2022, Shirey sent Plaintiff a letter rescinding the conditional offer of employment. The FAC asserts claims for national original discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), with respect to the First Application.

In the Ninth Circuit, Title VII and ADEA discrimination claims are analyzed via the *McDonnell Douglas* burden-shifting framework. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010) (Title VII); *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045,

1049 (9th Cir. 2012) (ADEA).  Under that framework:

> [P]laintiffs must first establish a prima facie case of employment discrimination.  If plaintiffs establish a prima facie case, the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.  If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful discrimination.

*Hawn*, 615 F.3d at 1155 (cleaned up).  *See also Opara v. Yellen*, 57 F.4th 709, 721-23 (9th Cir. 2023) ("[S]taving off a motion for summary judgment on disparate treatment claims under ADEA and Title VII entails three steps": [1] "The Prima Facie Case," [2] "Legitimate, Nondiscriminatory Reason," and [3] "Pretext.")[5]

"Establishing a prima facie case of national origin discrimination [under Title VII] . . . generally requires a plaintiff to show: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Opara*, 57 F.4th at 722 (cleaned up).

As for the ADEA, "a plaintiff may establish a prima facie case by producing evidence that he was (1) at least forty years old, (2) qualified for the position for which he applied, (3) denied the position, and (4) the position was given to a substantially younger person." *Stewart v. Wilkie*, 855 F. App'x 394, 394 (9th Cir. 2021) (cleaned up).

The Ninth Circuit has emphasized that "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII and ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  "The plaintiff need only offer

---

[5]    The Ninth Circuit has held that in a discrimination suit under Title VII or the ADEA, a plaintiff "may proceed by either using the *McDonnell Douglas* framework . . . or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's contested conduct." *Opara*, 57 F.4th at 721 (cleaned up).  Plaintiff's briefing fails to indicate which framework he seeks to invoke, but given Envoy's uncontested use of the *McDonnell Douglas* framework in its motion (Doc. 87 at 10-14), as well as Plaintiff's failure to come forward with any direct or circumstantial evidence of discriminatory intent, the Court will utilize the *McDonnell Douglas* framework.

evidence which 'gives rise to an inference of unlawful discrimination.'" *Id.* (citation omitted). Nevertheless, "[a] plaintiff's failure to offer evidence establishing a necessary element of his prima facie case will ordinarily be fatal to his claim." *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002). And "the plaintiff must also demonstrate that the defendant at least knew of the plaintiff's protected status, as 'an employer cannot intentionally discriminate against a job applicant' based on protected status without knowledge of such status." *Stewart*, 855 F. App'x at 394 (citation omitted). *See also Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987) ("An employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race.").

A.    **The Parties' Arguments**

Envoy first argues that "Plaintiff cannot demonstrate that he was qualified for the First Officer role." (Doc. 87 at 11.) Specifically, Envoy argues that "[Plaintiff] had only two months of commercial airline experience since 2013, when he left Mesa Airlines and cycled through a series of short-term jobs outside aviation and experienced lengthy gaps in employment. Indeed, Plaintiff had nearly two years of unemployment in the five years prior to applying with Envoy." (*Id.*) Envoy further argues that "Plaintiff made false statements on his application, including concealing four FAA flight test failures." (*Id.*) Envoy thus contends that "Plaintiff was not a qualified candidate." (*Id.*) For similar reasons, Envoy argues that it had legitimate, non-discriminatory reasons for rescinding the conditional job offer that were not pretextual. (*Id.* at 12-14.)

In his response and cross-motion, Plaintiff first argues that Envoy's argument that he was not qualified "is false as a matter of law" because he was fully eligible for employment under FAA regulations. (Doc. 90 at 19.) Plaintiff cites 14 C.F.R. § 121.436 and argues that "a pilot is eligible for hire if he possesses: ATP certificate . . . , [a]ppropriate type ratings or eligibility, FAA medical, and [r]equired aeronautical experience." (*Id.* at 19-20.) Plaintiff argues that he has "met all of these criteria . . . exceeding Envoy's 500-hour published requirement." (*Id.* at 20.) Plaintiff also argues that "under 14 C.F.R.

- 12 -

§ 121.433 no pilot is qualified to fly for Envoy until Envoy provides training and the pilot passes Envoy's FAA proficiency checks." (*Id.*) Plaintiff thus contends that Envoy's qualification argument "contradicts federal aviation law itself, and a court cannot accept a justification that is legally impossible." (*Id.*) Next, Plaintiff argues that Envoy violated various federal requirements in the course of rescinding his conditional employment offer. (*Id.* at 20-21.) Plaintiff proceeds to argue that "[d]uring the same month Plaintiff was rejected," Envoy hired four individuals who were "U.S. born"; "younger" (21 years old); "[h]ad no Part 121 experience"; and "[h]ad minimum requirements only." (*Id.* at 22.) Plaintiff argues "[t]his is direct comparator evidence supporting both Title VII and ADEA claims." (*Id.*) Finally, Plaintiff argues that because "Envoy has offered four different and inconsistent reasons for withdrawing [his] conditional offer," the "jury is entitled to find pretext." (*Id.* at 18-19.)

In reply, Envoy argues that Plaintiff "misunderstands the point" of its qualification argument. (Doc. 98 at 4.) Envoy "admits that" Plaintiff met "the federally mandated minimum qualifications for the pilot position" but argues that "Plaintiff did not meet *Envoy's* qualifications for its pilots." (*Id.*) Envoy thus argues that "[i]t does not matter whether the FAA considers him qualified; Envoy did not." (*Id.*) As for Plaintiff's pretext arguments, Envoy contends that its "position has been consistent from the start" and, regardless, "[s]lightly differing explanations for an adverse employment decision will not establish pretext unless those explanations are incompatible, and Envoy's are not." (*Id.* at 4-5.) As for Plaintiff's argument that it failed to "follow the steps required under federal law before withdrawing his offer," Envoy contends that these arguments are irrelevant, confusing, and based on a misunderstanding of the relevant authorities. (*Id.* at 6-7.) Finally, Envoy argues that although "Plaintiff points to the fact that Envoy hired four 21-year-old pilots from the United States," that information is "insufficient on its own to defeat summary judgment for several reasons." (*Id.* at 7.) First, Envoy argues that Plaintiff "makes bare assertions about the characteristics of the four comparators with no record support whatsoever" and that Plaintiff "offers nothing beyond his own argument in

- 13 -

support." (*Id.*) Envoy contends that Plaintiff "has not met his burden to show that *any* individuals outside his protected class were treated more favorably, whether similarly situated or not." (*Id.*) Next, citing *Moran v. Selig*, 447 F.3d 748 (9th Cir. 2006), Envoy argues that "with respect to individuals 'allegedly receiving more favorable treatment,' Plaintiff 'must demonstrate, at the least, that [he is] similarly situated to those employees in all material respects.'" (*Id.*) Envoy contends that Plaintiff has failed to do so because he "has offered nothing more than age and experience. His Response is silent on whether those hired pilots also had large gaps in employment prior to applying with Envoy, or whether they falsified information on their initial applications." (*Id.*) Finally, Envoy argues that "the decision-maker (Neider) had no knowledge of Plaintiff's age or national origin, and he is *older than Plaintiff.*" (*Id.* at 8.)

In reply, Plaintiff begins by asserting that Smith "reviewed every document requested by [Envoy], including [Plaintiff's] pilot certificate which has [his] date of birth and nationality" and that Smith admitted when being deposed that Smith "was hired by [Envoy] in March of 2019 without any previous airline experience with only 1600 hours of airplane time experience." (Doc. 112 at 2.) Plaintiff next argues that "[n]one of the other applicants hired by [Envoy] . . . were qualified as pilots . . . before completing the required training . . . per the Federal Aviation Regulations FAR 121.433." (*Id.* at 3.) Plaintiff contends that although "Neider . . . testified . . . that he was the only one who reviewed [Plaintiff's] application and decided not to include [him] in the training class," "[l]ying is not what [he] expect[s] from an airline trusted have moral values." (*Id.*) Finally, Plaintiff argues that Envoy "keeps repeating they were not aware of [his] age and nationality, when the first document required for the pilot position is the Airline Transport Pilot certificate, which has [his] date of birth and nationality up front, which was reviewed copied during the interview and was added to the file to be reviewed by the [CRB], as explained by [Smith] during his deposition, and [Neider] during his own deposition later." (*Id.* at 3-4.)

…

- 14 -

B.    **Analysis**

One of the required elements of Plaintiff's prima facie case under Title VII and the ADEA is that Plaintiff was "qualified" for the position for which he applied. *Opara,* 57 F.4th at 722 (Title VII); *Stewart*, 855 F. App'x at 394 (ADEA). Envoy contends that Plaintiff was not qualified in light of the undisputed evidence that he (1) lacked recent commercial flight experience and his other experience was marred by significant gaps; and (2) initially failed to disclose certain derogatory information in his First Application, including that he failed four FAA flight tests.

On the one hand, the Court is skeptical that these arguments implicate whether Plaintiff was "qualified" for purposes of his prima facie case. Being "qualified," in this context, simply means meeting or exceeding the employer's minimum objective criteria for the position. *See, e.g.*, *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1123-24 (9th Cir. 2009) ("This court has long held that subjective criteria should not be considered in determining whether a plaintiff is 'qualified' for purposes of establishing a prima facie case under *McDonnell Douglas*. Instead, the qualifications that are most appropriately considered at step one of *McDonnell Douglas* are those to which objective criteria can be applied . . . . [T]he first step must focus on the plaintiff's objectively measurable qualifications.") (cleaned up); *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046-47 (8th Cir. 2005) ("At the prima facie stage . . . the employee must demonstrate objective qualifications. An employee must show that her qualifications are equivalent to the minimum objective criteria. The threshold criteria are the plaintiff's physical ability, education, experience in the relevant industry, and the required general skills.") (citations omitted); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) ("The prima facie burden of showing that a plaintiff is qualified can . . . be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field."). Although Envoy required applicants to make various disclosures regarding their driving history, criminal history, employment history, aviation training and experience, and record of FAA

- 15 -

interactions, Envoy did not state in the application that any particular disclosures on those topics—such as a lack of recent commercial flight experience, other gaps in employment, or past FAA flight test failures—would be disqualifying.  (Doc. 87-2 at 2-17.)[6]  Indeed, Envoy initially extended a conditional offer of employment to Plaintiff despite his disclosed lack of recent commercial flight experience and despite the other gaps in his employment history—an outcome that suggests those features of Plaintiff's application did not render him objectively unqualified for the position.  (Doc. 87-2 at 64   ¶ 2 [Shirey's declaration: "In October 2022, Envoy (along with the airline industry as a whole) was experiencing a shortage of pilots.  Due to the shortage, Envoy issued conditional offers to applicants who appeared to meet the minimum qualifications for a pilot position."].)  Nor has Envoy come forward with a written position description specifying that the minimum objective qualifications for the open position included a certain amount of recent commercial flight experience, a lack of other gaps in employment, and the absence of FAA flight test failures.  *Compare Alawi v. Sprint Nextel Corp.*, 544 F. Supp. 2d 1171, 1178 (W.D. Wash. 2008) ("Sprint contends that B2B sales experience was required for the position and Ms. Alawi's lack of this experience made her unqualified for the position.  However, Sprint's job description for the Account Executive position does not require B2B sales experience. . . .  At a minimum, a genuine issue exists as to whether B2B sales experience was a necessary prerequisite for the Account Executive I position.") *with Morita v. S. Cal. Permanente Med. Grp.*, 541 F.2d 217, 219 (9th Cir. 1976) ("An essential requirement for a staff X-ray technician to be promoted to a senior X-ray technician at the Hospital is that the technician be able to perform special procedures. . . .  [B]ecause Morita was incapable of performing special procedures, he was not qualified to be promoted to a

---

[6]      In contrast, in *Gault v. Charles Schwab & Co. Inc.*, 2025 WL 2208287 (D. Ariz. 2025)—which Envoy cites in its motion papers—the plaintiff "was not qualified for the position because she failed to disclose all instances of termination in her employment application and screening interview *even though she was told doing so could affect her eligibility*."  *Id.* at *4 (emphasis added).  Furthermore, in that case, the employer also "rescinded employment offers of two other applicants belonging to different protected classes for making inaccurate and inconsistent statements regarding their employment histories and prior terminations."  *Id.* at *5.

senior X-ray technician at the Hospital.").

The only minimum objective criteria for the pilot position that Envoy identified in its submissions to Plaintiff were passing a drug test, passing a background check, and undergoing a PRIA background check. (Doc. 87-2 at 24, 68.)  Additionally, although 14 C.F.R. § 121.436 identifies additional minimum regulatory "Pilot Qualification" requirements, it is undisputed that Plaintiff satisfied all of those requirements.  Against this backdrop, Plaintiff has likely "met his minimal prima facie burden of establishing that he was qualified for the" pilot position.  *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002).

Notwithstanding this, Envoy contends that Plaintiff's lack of recent commercial flight experience, other gaps in employment, and belated disclosure of his FAA flight test failures show that he "did not meet *Envoy's* qualifications for its pilots."  (Doc. 98 at 4.) But this argument "conflate[s] the prima facie and pretext stages of the *McDonnell Douglas* test."  *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011).  *See also Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1023 (D. Or. 2008) ("Starbucks . . . argues that Ms. Hedum's corrective action notices and performance reviews demonstrate she was not qualified for her position.  Starbucks's argument conflates Ms. Hedum's burden at the first step of the burden-shifting analysis to make out a prima facie case with Starbucks's burden at the second step to proffer a legitimate reason for her termination."). Although Neider testified that he viewed Plaintiff's lack of recent commercial flight experience and other gaps in employment as two of multiple reasons why Plaintiff was "not competitive" for the position and separately viewed Plaintiff's belated disclosure of the FAA flight test failures as raising "concerns" (Doc. 87-3 at 8 ¶¶ 6-7), these explanations do not squarely address whether Plaintiff met or exceeded the minimum objective criteria for the position.  Instead, they seem to address the distinct question—addressed during the next step of the *McDonnell Douglas* framework—whether Envoy has articulated legitimate, non-discriminatory reasons for the challenged hiring decision.  *Cf. Mukherjee v. Wash. State Univ.*, 2021 WL 607856, *3 (E.D. Wash. 2021) (concluding that plaintiff

satisfied the qualification prong because he "met the minimum qualifications for the position" and clarifying that although "[t]here were also a number of preferred qualifications, . . . the Court need not consider those for the purposes of the prima facie case").[7]

On the other hand, Envoy has easily met its burden of proffering legitimate, non-discriminatory reasons. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (the employer's burden is "one of production, not persuasion"). Even if Plaintiff's lack of recent commercial flight experience and other gaps in employment were not objectively disqualifying on this record, they still served as legitimate, non-discriminatory reasons for not hiring him. *Cf. Killian v. Hagel*, 2015 WL 13239134, *4 (S.D. Cal. 2015) ("Plaintiff's lack of recent experience provided Defendant with a legitimate non-discriminatory reason for declining to interview and hire Plaintiff."). Similarly, Plaintiff's initial failure to disclose the existence of multiple past failed FAA flight tests was, at a minimum, a legitimate, non-discriminatory reason for not hiring him. *Cf. Gault*, 2025 WL 2208287 at *6 ("[E]ven assuming Gault made a prima facie case, Schwab has provided evidence of a legitimate nondiscriminatory reason—the conflicting and incomplete employment and termination history she provided—for rescinding her offer.").

Because Envoy has met its burden of production, the burden shifts back to Plaintiff to show that Envoy's proffered reasons are pretextual. *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005). "A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence. Direct evidence is evidence which, if

---

[7]  Envoy also contends the analysis need not proceed past the first step of the *McDonnell Douglas* framework because there is no evidence that Neider, the sole Envoy representative responsible for evaluating Plaintiff's First Application, was aware of Plaintiff's protected characteristics. True, Neider asserted in his declaration that he was unaware of Plaintiff's age or national origin at the time of the evaluation (Doc. 87-3 at 9 ¶ 9), but Neider also acknowledged that he "reviewed Plaintiff's application" (*id.* at 8 ¶ 4). The First Application, in turn, states that Plaintiff's passport "Country of Issuance" is "Algeria." (Doc. 87-2 at 2.) The First Application also includes a passage in which Plaintiff described certain activities he performed "as a teenager in my home country of Algeria" (*id.* at 11) and states that Plaintiff attended college in Algeria in the early 1980s (*id.* at 3). On this record, a reasonable factfinder could conclude that Neider was aware of Plaintiff's age and national origin, notwithstanding his denial of such knowledge.

believed, proves the fact of discriminatory animus without inference or presumption. Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer. Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination. It can take two forms. First, the plaintiff can make an affirmative case that the employer is biased. For example, statistical evidence is circumstantial evidence that could, if sufficiently probative, point to bias. Second, the plaintiff can make his case negatively, by showing that the employer's proffered explanation for the adverse action is unworthy of credence." *Id.* at 1094-95 (cleaned up). "The distinction between direct and circumstantial evidence is crucial, because it controls the amount of evidence that the plaintiff must present in order to defeat the employer's motion for summary judgment. Because direct evidence is so probative, the plaintiff need offer 'very little' direct evidence to raise a genuine issue of material fact. But when the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment." *Id.* at 1095 (citations and footnote omitted). Here, because Plaintiff seeks to rely solely on circumstantial evidence of pretext—he does not proffer any direct evidence of age- or national origin-based animus and instead attempts to show that Envoy's proffered reasons are unworthy of credence—the "specific and substantial" standard applies.

In his motion papers, Plaintiff does not directly challenge Envoy's discussion of his lack of recent commercial flying experience and the other gaps in his employment record. This, alone, undermines Plaintiff's position. *Curley v. City of North Las Vegas*, 772 F.3d 629, 633 (9th Cir. 2014) ("Disputing only one of several well-supported, independently sufficient reasons for termination is generally not enough to defeat summary judgment."); *Gonzalez v. U.S. Human Rights Network*, 2026 WL 382043, *1 (9th Cir. 2026) ("Because Gonzalez fails to rebut USHRN's proffered reasons for her termination, USHRN is entitled to summary judgment.").[8]

---

[8] To the extent Plaintiff's assertion that certain 21-year-old candidates hired for the pilot position "[h]ad no Part 121 experience" (Doc. 90 at 22) was intended to show that Envoy's reasons were pretextual, this argument lacks merit. First, Plaintiff makes no effort to explain why "Part 121 experience" is the only proxy for commercial flying experience.

Nor is there any merit to Plaintiff's argument that Envoy's proffered reasons may be deemed pretextual because Envoy "offered four different and inconsistent reasons for withdrawing [his] conditional offer." (Doc. 90 at 19.) On December 8, 2022, Neider determined that Plaintiff was "not competitive" in part because Plaintiff "had not flown for a commercial airline in nearly 10 years, and that was only for a couple of months" and in part because Plaintiff otherwise "held numerous jobs, none of which he stayed at for very long, and he had large gaps in his employment"—considerations that suggested it was "unlikely that Plaintiff would stay in the position long enough for the significant training investment to be worthwhile." (Doc. 87-3 at 8 ¶ 6.) This "not competitive" determination was reflected in contemporaneous internal records. (*Id.* at 11.) That same day, Envoy informed Plaintiff that his conditional offer had been rescinded because he had "not successfully passed the remaining portions of the Pilot pre-employment process." (*Id.* at 13.) On December 23, 2022, when Plaintiff followed up with Neider, Neider (who did not remember Plaintiff's application specifically) stated again that Plaintiff was "not-competitive" and that it had something to do with somewhere Plaintiff had "worked in the past." (Doc. 90-2 at 2.) In July 2023, after Plaintiff filed a charge of discrimination with the ACRD, Envoy again stated that "the decision not to hire [Plaintiff] was mainly based on [Plaintiff's] employment history. [Plaintiff] had numerous and lengthy periods of unemployment; he did not maintain pilot positions; and when he was employed as a pilot, he remained only short periods." (*Id.* at 14.) And again, during all stages of this litigation, Envoy has identified Plaintiff's lack of recent commercial flying experience and job-hopping as reasons for the challenged hiring decision. (Doc. 112-1 at 76-77 [Neider's deposition, identifying "recency of airline experience and numerous jobs since [Plaintiff]

Second, at any rate, Plaintiff does not cite any portions of the record to substantiate his factual assertion that the 21-year-old pilots lacked Part 121 experience. *See* Fed. R. Civ. P. 56(e)(2). And third, Plaintiff makes no effort to show that the 21-year-old pilots engaged in job-hopping or otherwise had significant gaps in their employment histories. Meanwhile, Plaintiff's undeveloped references to Smith's flight experience are unavailing because Smith was, by Plaintiff's own account, hired during a separate evaluation process that occurred years earlier and because Plaintiff makes no effort to show that Smith's pre-hiring employment history included job-hopping and significant gaps. (Doc. 112 at 2.)

- 20 -

left the airline industry" as reasons for the challenged decision]; Doc. 87 at 12 [Envoy's summary judgment brief, identifying an "employment history . . . full of significant gaps and a complete lack of any recent, relevant experience" as legitimate, non-discriminatory reasons for the challenged decision].) No inference of pretext arises in this circumstance. *See, e.g.*, *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1997) ("Nidds argues that summary judgment against his claims was improper because of Schindler's shifting explanations for the October 1992 layoff. These alone, he insists, are enough to raise a genuine issue as to its discriminatory motives. . . . However, the reasons given by Schindler are not incompatible, and therefore not properly described as 'shifting reasons.'"); *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733-34 (7th Cir. 2001) ("[Johnson] says that the alleged vacillation in Nordstrom's reasons for failing to promote her creates an issue of fact as to pretext. . . . [But] pretext [is] demonstrated by not only shifting but also conflicting, and at times retracted, justifications for adverse treatment. Here, Nordstrom simply supplemented its explanations in the context of EEOC charges and litigation; there has been no retraction of any of its reasons for failing to promote Johnson nor are any of its reasons inconsistent or conflicting. Thus, Johnson has failed to demonstrate that Nordstrom's legitimate, nondiscriminatory reasons for failing to promote her to beauty director were pretextual.") (cited with approval in *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002)); *Culver v. Qwest Communications Corp.*, 306 F. App'x 403, 405 (9th Cir. 2009) ("[W]e have made clear that separate reasons offered by an employer are not considered 'shifting' if they are not 'incompatible.' As the district court correctly concluded, Qwest has consistently cited as the reason for Culver's termination that he was not on company time when he should have been and that he then filled out his time card as though he had been working all day.") (citation omitted).

Although the analysis could end there, Plaintiff has also failed to controvert Envoy's final proffered reason for the challenged hiring decision, which is his initial failure to disclose the failed FAA flight tests. Neider identified this as another reason for the challenged hiring decision (Doc. 87-3 at 8 ¶ 7); Envoy reiterated this point in its pre-

litigation letter to the ACRD (Doc. 90-2 at 14-16 [noting that Plaintiff's "flight testing failures played a minor role in this decision" and that, "stunningly, [Plaintiff] changed his original 'No' answers to 'Yes' regarding whether he had ever received a notice of disapproval from an FAA flight instructor or failed an FAA Oral, Practical, or Flight Test"]); and Envoy has consistently made the same argument in this litigation (Doc. 87 at 12 ["Plaintiff also lied on his application, and not about inconsequential matters. These are legitimate, nondiscriminatory reasons for Envoy's decision . . . ."].)  Once again, this does not constitute the sort of shifting, retraction, and inconsistency that might raise an inference of pretext. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) ("All of the evidence supporting the employer's proffered reasons came from statements, depositions, and declarations prepared after the employment decision was made and while this litigation was in progress. This alone is not disqualifying. 'Simply because an explanation comes after the beginning of litigation does not make it inherently incredible.'") (citation omitted).

One final loose end is Plaintiff's undeveloped argument, in his reply, that "[a]fter reviewing a copy of [his] pilot training records, during the deposition, [Neider] admitted there were not failed training records." (Doc. 112 at 7. *See also* Doc. 112-1 at 27 [Neider's deposition: Q: "[I]s there any record under Notices of Disapproval?" A: "It says, 'Search reveals no records on file.'"])  To the extent Plaintiff is arguing that his own admissions in the First Application regarding his failed FAA flight tests were inaccurate, this is irrelevant to the pretext analysis—all that matters is that Envoy honestly believed the reasons for its decision at the time of the decision. *See, e.g.*, *Villiarimo*, 281 F.3d at 1063 ("In judging whether Aloha's proffered justifications were 'false,' it is not important whether they were *objectively* false (e.g., whether Villiarimo *actually* lied). Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless. As the district court correctly observed, Villiarimo presented no evidence that Aloha did not honestly believe its proffered reasons.") (citation and internal quotation marks omitted); *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The

focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.  We do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision.") (citations omitted).

III.    Second Application

In late 2023, Plaintiff submitted his Second Application to attend the Envoy Recruiting Event.  On December 8, 2023, Plaintiff received an email from Envoy, containing Hayes's email signature, informing him that he did not qualify to attend the Envoy Recruiting Event.  The FAC asserts claims for age and national origin discrimination in relation to the Second Application, as well as claims for retaliation.

A.    **Discrimination**

1.    The Parties' Arguments

Envoy argues that it "rejected Plaintiff for the [Envoy Recruiting Event] based solely on his admitted lack of qualifications and not for any unlawful reason." (Doc. 87 at 14.)  Specifically, Envoy argues that "Plaintiff admitted that he did not meet the FAA-mandated qualifications for the DEC position.  That admission alone defeats his claims." (*Id.*)  Envoy also argues that "[e]ven if Envoy was mistaken as to the role for which Plaintiff applied, courts consistently hold that an employer's error or mistaken judgment in the hiring process cannot establish discrimination." (*Id.*)  Separately, Envoy argues that the Second Application "did not require disclosure of his age or national origin" and that "Plaintiff admits he has no evidence that the Envoy employee who decided he was unqualified knew either his age or national origin." (*Id.* at 14-15.)  Envoy argues that "[w]ithout this knowledge, Plaintiff cannot show but-for causation as a matter of law." (*Id.* at 15.)

In his response and cross-motion, Plaintiff argues that Envoy's qualification argument fails because "[t]he reason given in the [December 2023 Email] ('did not meet minimum requirements') was false, because Plaintiff had over 730 hours of Part 121 time, exceeding the published standard." (Doc. 90 at 25.)  Plaintiff also argues that "Envoy has

- 23 -

offered four different and inconsistent reasons for withdrawing Plaintiff's conditional offer and later refusing to allow him to attend [the Envoy Recruiting Event]," and therefore "a jury is entitled to find pretext." (*Id.* at 19.)

Envoy does not advance any new arguments in reply. (*See generally* Doc. 98.)

In his reply, Plaintiff argues that the Envoy Recruiting Event "was not advertised as a [DEC] event, as shown by their own adds [sic] and the form [he] filled out for that event on December 7 2023." (Doc. 112 at 4.) Plaintiff further argues that he was qualified to attend the Envoy Recruiting Event because "[Envoy] was looking for anyone with over 500 hours to attend the December 2023 hiring event" and he had "733 hours." (*Id.* at 6.) Next, Plaintiff argues that Hayes's deposition demonstrates that Hayes "is not the author of the [December 2023 Email]" and that Hayes "admits being the sender of the email only." (*Id.* at 9.) Finally, Plaintiff argues that "[c]omparing [Hayes's] age (23), his US citizenship and the lack of the required Airline Transport Pilot Certificate at the time he was hired in 2023, to [Plaintiff's] age (57), Algerian national with more than what is required by [Envoy], leads to a blatant act of discrimination conclusion." (*Id.*)

            2.    Analysis

The parties dispute whether Plaintiff was "qualified" to attend the Envoy Recruiting Event, as required to satisfy his prima facie case. The dispute boils down to whether the Envoy Recruiting Event was a DEC event, thus requiring at least 1,000 hours of Part 121 qualifying flight time (which Plaintiff lacked), or was instead open to pilots with 500 or more hours of Part 121 qualifying flight time (which Plaintiff possessed).

Although the Second Application itself identifies the "Attendee Requirements" as "≥ 500 hrs of qualifying Part 121, 135, or 91 flight time" (Doc. 90-3 at 7), Shirey—Envoy's director of air operations recruitment—submitted a declaration avowing that the Envoy Recruiting Event was a "[DEC] recruiting event"; that "[t]o be eligible to be hired directly into a captain role, an applicant needs . . . 1,000 hours of flight time under Part 121 of the Federal Aviation Regulations"; that Plaintiff "was rejected for the DEC event because he did not meet the minimum requirements"; and that Envoy simply used its "standard pilot

- 24 -

application" when soliciting applications for the Envoy Recruiting Event—even though the form "did not state the requirement for 1,000 hours of flight time"—so that Envoy could potentially "consider the applicant for other positions for which 1,000 hours of flight time is not required." (Doc. 87-2 at 65 ¶¶7-10.)  Likewise, Hayes—the employee whose email signature is on the rejection email—acknowledged during his deposition that the Second Application "does state that the attendee requirements are greater than or equal to 500 hours of qualifying time" but then answered "[c]orrect" when asked if this was "a mistake or an error of some kind." (Doc. 112-3 at 45, 61.)  Hayes further testified that, to his knowledge, "everyone in attendance had a thousand hours of time at a minimum." (*Id.* at 64.)

On this record, no reasonable juror could find that Plaintiff was qualified to attend the Envoy Recruiting Event.  The Second Application was governed by a minimum objective criterion—each applicant needed to possess 1,000 hours or more of Part 121 qualifying flight time.  It is undisputed that Plaintiff failed to meet that threshold.  (Doc. 90-3 at 8 [Second Application, listing 733 hours].)  And although the Second Application itself seemed to indicate that the threshold was only 500 hours or more, the undisputed evidence establishes this was inaccurate.  The relevant Envoy representatives have sworn, under penalty of perjury, that the form was incorrect and that only applicants with at least 1,000 hours would be considered.  Nor has Plaintiff come forward with any evidence (such as evidence that an applicant with fewer than 1,000 hours attended or was invited to attend the event) to controvert that testimony.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party . . . must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.  Hence the nonmoving party may not merely state that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim.  Instead, it

must produce at least some significant probative evidence tending to support the complaint.") (cleaned up); *Miller-Cunningham v. MacAllister*, 2019 WL 1130091, \*6 (D. Ariz. 2019) ("Contrary to Plaintiff's counsel's assertion that the Court is necessarily determining Defendant's credibility by considering Defendant's undisputed testimony, the Court is not making a credibility determination, but is basing its decision on the only admissible evidence before the Court at summary judgment.").

Alternatively, even assuming Plaintiff was qualified to attend the Envoy Recruiting Event, "[t]here is . . . insufficient evidence from which a reasonable trier of fact could conclude that similarly situated individuals outside [Plaintiff]'s protected classes were treated more favorably." *Robinson v. Ahuja*, 2022 WL 17740303, \*5 (N.D. Cal. 2022), *aff'd*, 2024 WL 4553788 (9th Cir. 2024). There is no evidence in the record that any individual invited to attend the Envoy Recruiting Event had a different national origin than Plaintiff or was younger than Plaintiff. *Opara*, 57 F.4th at 722; *Stewart*, 855 F. App'x 394. Although Plaintiff asserts that four 21-year-old "U.S.-born" pilots received jobs with Envoy (Doc. 90 at 22), Plaintiff does not cite evidence suggesting those individuals were invited to attend the Envoy Recruiting Event or were hired through that event. To the contrary, Plaintiff contends that all four of those individuals were hired in December *2022*—a year before the Envoy Recruiting Event took place. (*Id.* at 13.) In a related vein, to the extent Plaintiff seeks to use Hayes as a similarly situated individual, that comparison is inapposite. Nothing in the record suggests that Hayes, who was already an Envoy employee when Plaintiff submitted his Second Application, applied to attend the Envoy Recruiting Event. *Cf. Drake v. Cnty. of Pima*, 2024 WL 3848402, \*2 (D. Ariz. 2024) ("Plaintiff fails to plausibly allege that similarly situated individuals outside his protected class were treated more favorably. . . . Plaintiff fails to plausibly allege[] that the individuals listed in the guest sign-in sheet at the Agua Nueva wastewater plant were . . . interviewing for the same position as Plaintiff, if at all . . . .").

B.    **Retaliation**

The Ninth Circuit has "long considered the ADEA retaliation provision to be the

'equivalent of the anti-retaliation provision of Title VII.'" *Stilwell v. City of Williams*, 831 F.3d 1234, 1246-47 (9th Cir. 2016) (citation omitted). "The same analysis thus applies to both." *Coleman v. Home Health Res. Inc.*, 269 F. Supp. 3d 935, 941 (D. Ariz. 2017). *See also Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1441 (9th Cir. 1990) ("Those circuits that have considered ADEA retaliation claims have generally adopted the analysis used in Title VII cases without comment.").

To establish a prima facie case of retaliation under Title VII or the ADEA, a plaintiff "must show that (1) he engaged in protected activity; (2) his employer or potential employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *White v. Wilson*, 2018 WL 6175385, *6 (C.D. Cal. 2018), *aff'd sub nom. White v. Barrett*, 812 F. App'x 629 (9th Cir. 2020) (cleaned up). As with discrimination claims, "[r]etaliation claims are subject to the same *McDonnell Douglas* burden-shifting analysis." *Id*. Thus, if a plaintiff can make out a prima facie case of retaliation, "the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

### 1.    The Parties' Arguments

Envoy first argues that "[t]he decision-maker had no knowledge of Plaintiff's . . . ACRD charge" and that "Plaintiff admits he has no evidence that the Envoy employee who decided he was unqualified [to attend the Envoy Recruiting Event] knew . . . of his prior ACRD charge." (Doc. 87 at 14-15.) Envoy next argues that because Plaintiff failed to "meet the FAA-mandated qualifications for the DEC position," it "was obligated to reject his application." (*Id.* at 14, 15.) Envoy contends that "[c]ourts have consistently held that failure to meet minimum qualifications is a legitimate, nondiscriminatory and/or non-retaliatory reason for an employer's rejection of a candidate." (*Id.* at 15.) Envoy concludes that Plaintiff's "claims fail" because he "cannot present any evidence that Envoy's stated reason for rejecting his application for the [Envoy Recruiting Event] is 'unworthy of

- 27 -

credence' or that a . . . retaliatory reason 'more likely motivated' the decision." (*Id.* at 16, citation omitted.)

In Plaintiff's response and cross-motion, he argues that (1) he engaged in protected activity by "fil[ing] a discrimination complaint with the [ACRD] alleging age and national origin discrimination by Envoy;" (2) Envoy took adverse action after learning of the complaint by "den[ying] Plaintiff's request to attend [the Envoy Recruiting Event], despite the fact that he met and exceeded the stated eligibility requirements;" and (3) "timing and fabrication of the reason establish causation." (Doc. 90 at 23-25.) As to the last point, Plaintiff argues that "the temporal proximity between the [ACRD] complaint, and the hiring-event denial . . . strongly supports retaliatory motive" and that "[t]he reason given in the 2023 denial ('did not meet minimum requirements') was false, because Plaintiff had over 730 hours of Part 121 time, exceeding the published standard." (*Id.* at 25.) Plaintiff also argues that "[t]he denial email was sent from the same shared recruitment address used by Director of Recruiting [Shirey], but signed under the name 'Hunter Hayes.'" (*Id.* at 24.) Plaintiff—who at the time of his cross-motion and response had not yet deposed Hayes— then argues that because "Hayes was 'on sick leave' and unavailable for deposition," Plaintiff was prevented "from discovering whether: Hayes authored the email, Shirey directed the denial, or [t]he justification was fabricated post-hoc." (*Id.*)

In reply, Envoy argues that "[f]or purposes of summary judgment, [it] does not dispute that Plaintiff engaged in protected activity, or that the rejection of his 2023 request to attend the [Envoy Recruiting Event] constituted an adverse employment action. But Envoy presented a legitimate, non-retaliatory reason: Plaintiff did not have the minimum qualifications under federal law to be a captain directly upon hire." (Doc. 98 at 8.) Envoy also argues that "[t]he fact that Plaintiff was unable to depose [Hayes] is immaterial. Plaintiff did depose [Shirey], who confirmed, consistent with her declaration, that the [Envoy Recruiting Event] in December 2023 was limited to pilots who had enough experience to join Envoy directly as a captain." (*Id.* at 9 n.4.)

In his reply, Plaintiff, having now deposed Hayes, contends that Hayes "admitted

during his deposition . . . that he was not the author of [the December 2023 email] and that he was told to send it to [Plaintiff] by someone else.  He also admitted that he receives instructions on a regular basis from [Shirey] or his supervisors, whose desks are just around the corner from his desk." (Doc. 112 at 4.)  Specifically, this time referencing Shirey's deposition, Plaintiff argues that the December 2023 Email "was sent from a general pilot inbox and not [Hayes's] company email" and states that "[i]t's possible to [sic] someone else in [Shirey]'s department to draft a message and have [Hayes] send it." (*Id.* at 7.) Plaintiff thus contends that because the email account used by Hayes "is also used by [Shirey's] entire department," there is "a direct link between [Shirey] and the message in the [December 2023 Email]" and thus "[r]etaliation did occur in 2023." (*Id.*)

### 2. Analysis

Plaintiff's retaliation claims require little additional analysis in light of the conclusions reached in earlier portions of this order.  Even assuming that Plaintiff's evidence is sufficient to establish a prima facie case of retaliation, Envoy may avoid liability by proffering a legitimate, non-discriminatory reason for the adverse action.  Here, Envoy has done so—as discussed in Part III.A above, Plaintiff was not qualified because he failed to satisfy the 1,000 hour threshold.  Nor has Plaintiff come forward with evidence establishing that this reason was pretextual—there is no evidence, for example, that other applicants who fell below the 1,000 hour threshold were allowed to attend.

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motion for summary judgment (Doc. 90) is **denied**.

2. Envoy's motion for summary judgment (Doc. 87) is **granted**.

3. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 7th day of May, 2026.

Dominic W. Lanza
United States District Judge

- 29 -